Approved: _____
          Jason A. Richman / Kyle Wirshba
          Benjamin Woodside Schrier
          Assistant United States Attorneys

Before:   HONORABLE JAMES L. COTT          **21 MAG 4456**
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - x
                                  :
UNITED STATES OF AMERICA          :     **SEALED COMPLAINT**
                                  :
       - v. -                     :     Violations of
                                  :     18 U.S.C. §§ 924, 2;
CARLOS ORENSE AZOCAR,             :     21 U.S.C. § 963; and
   a/k/a "El Gordo,"              :     46 U.S.C. § 70506
                                  :
                 Defendant.       :     COUNTY OF OFFENSE:
                                  :     NEW YORK
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

         MATTHEW S. PASSMORE, being duly sworn, deposes and says
that he is a Special Agent with the Drug Enforcement Administration
("DEA") and charges as follows:

                            COUNT ONE
                (Narcotics Importation Conspiracy)

         1.    From at least in or about 2003, up to and including
at least in or about October 2016, in Venezuela, Colombia, the
Dominican Republic, Mexico, and elsewhere, and in an offense begun
and committed out of the jurisdiction of any particular State or
district of the United States, CARLOS ORENSE AZOCAR, a/k/a "El
Gordo," the defendant, and others known and unknown, at least one
of whom will be first brought to and arrested in the Southern
District of New York, intentionally and knowingly combined,
conspired, confederated, and agreed together and with each other
to violate the narcotics laws of the United States.

         2.    It was a part and an object of the conspiracy that
CARLOS ORENSE AZOCAR, a/k/a "El Gordo," the defendant, and others
known and unknown, would and did import into the United States and

into the customs territory of the United States from a place outside thereof a controlled substance, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

3.    It was further a part and an object of the conspiracy that CARLOS ORENSE AZOCAR, a/k/a "El Gordo," the defendant, and others known and unknown, would and did manufacture, distribute, and possess with intent to distribute, a controlled substance, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, in violation of Title 21, United States Code, Sections 959(a) and 960(a)(3).

4.    It was further a part and an object of the conspiracy that CARLOS ORENSE AZOCAR, a/k/a "El Gordo," the defendant, and others known and unknown, would and did, on board an aircraft registered in the United States, manufacture, distribute, and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 959(c) and 960(a)(3).

5.    The controlled substance that CARLOS ORENSE AZOCAR, a/k/a "El Gordo," the defendant, and others known and unknown, conspired to (a) import into the United States and into the customs territory of the United States from a place outside thereof; (b) manufacture, distribute, and possess with intent to distribute, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States from a place outside thereof; and (c) manufacture, distribute, and possess with intent to distribute on board an aircraft registered in the United States, was five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 960(b)(1)(B).

(Title 21, United States Code, Section 963; and Title 18, United States Code, Section 3238.)

<u>COUNT TWO</u>

(Conspiracy to Violate Maritime Drug Enforcement Laws)

6.    From at least in or about 2003, up to and including at least in or about October 2016, in Venezuela, Colombia, the Dominican Republic, Mexico, on the high seas, and elsewhere, and in an offense begun and committed out of the jurisdiction of any

particular State or district of the United States, CARLOS ORENSE AZOCAR, a/k/a "El Gordo," the defendant, and others known and unknown, at least one of whom will be first brought to and arrested in the Southern District of New York, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the maritime drug enforcement laws of the United States.

7.   It was a part and an object of the conspiracy that CARLOS ORENSE AZOCAR, a/k/a "El Gordo," the defendant, and others known and unknown, while on board a vessel subject to the jurisdiction of the United States, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 46, United States Code, Section 70503(a)(1).

8.   The controlled substance that CARLOS ORENSE AZOCAR, a/k/a "El Gordo," the defendant, and others known and unknown, conspired to distribute and possess with intent to distribute on board a vessel subject to the jurisdiction of the United States was five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 46, United States Code, Section 70506(a), and Title 21, United States Code, Section 960(b)(1)(B).

(Title 46, United States Code, Sections 70506(b) and 70504(b)(2); and Title 18, United States Code, Section 3238.)

<u>COUNT THREE</u>
(Possession of Machineguns and Destructive Devices)

9.   From at least in or about 2003, up to and including at least in or about October 2016, in Venezuela, Colombia, the Dominican Republic, Mexico, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States and for which at least one of two or more joint offenders will be first brought to and arrested in the Southern District of New York, CARLOS ORENSE AZOCAR, a/k/a "El Gordo," the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, to wit, the conspiracy to import narcotics charged in Count One of this Complaint and the conspiracy to violate maritime drug enforcement laws charged in Count Two of this Complaint, knowingly used and carried firearms, and, in furtherance of such crime, knowingly possessed firearms, and aided and abetted the use, carrying, and possession of firearms, to wit, machineguns that were capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger, as well as destructive devices.

(Title 18, United States Code, Sections 924(c)(1)(A),
924(c)(1)(B)(ii), 3238, and 2.)

<u>COUNT FOUR</u>
(Conspiracy to Possess Machineguns and Destructive Devices)

10.  From at least in or about 2003, up to and including at least in or about October 2016, in Venezuela, Colombia, the Dominican Republic, Mexico, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, CARLOS ORENSE AZOCAR, a/k/a "El Gordo," the defendant, and others known and unknown, at least one of whom will be first brought to and arrested in the Southern District of New York, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 924(c).

11.  It was a part and object of the conspiracy that CARLOS ORENSE AZOCAR, a/k/a "El Gordo," the defendant, and others known and unknown, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, to wit, the conspiracy to import narcotics charged in Count One of this Complaint and the conspiracy to violate maritime drug enforcement laws charged in Count Two of this Complaint, would and did use and carry firearms, and, in furtherance of such drug trafficking crime, possess firearms, including machineguns that were capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger, as well as destructive devices, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 924(c)(1)(B)(ii).

(Title 18, United States Code, Sections 924(o) and 3238.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

12.  I am a Special Agent with the DEA.  This affidavit is based on my conversations with law enforcement officers and the witnesses described herein, as well as my review of documents, during the course of the investigation.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of the investigation.  Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

<u>The ORENSE DTO</u>

13.   Based on my participation in this investigation; my conversations with other law enforcement officers and witnesses; my review of law enforcement reports and records and other documents; and my training and experience, I have learned the following, in substance and in part:

a.   On or about March 5, 2020, a federal grand jury sitting in the Southern District of New York returned a superseding indictment (the "Superseding Indictment") charging Nicolás Maduro Moros, Diosdado Cabello Rondón, Hugo Armando Carvajal Barrios ("Carvajal"), Clíver Antonio Alcalá Cordones, Luciano Marín Arango, and Seuxis Paucis Hernández Solarte with various narco-terrorism, narcotics trafficking, and weapons offenses.  The Superseding Indictment is attached hereto as Exhibit A, and is expressly incorporated herein.

b.   A cooperating witness ("CW-1")[1] has provided the following information, in substance and in part:

i.   From at least in or about 2003 through at least in or about 2010, CW-1 worked for a drug trafficking organization (the "ORENSE DTO") led by CARLOS ORENSE AZOCAR, a/k/a "El Gordo," the defendant, and others.  The ORENSE DTO purchased at least approximately tens of thousands of kilograms of cocaine from sources of supply located in or around Colombia and Venezuela, and facilitated the transportation of the cocaine from South America to Puerto Rico and various countries in Central America, including the Dominican Republic and Mexico, so that the cocaine could be imported into the contiguous United States.

ii.   CW-1 worked directly for ORENSE, including by supervising aspects of the ORENSE DTO's transportation of shipments containing thousands of kilograms of cocaine.  For example, in or about 2008 or 2009, in or around

───────────────

[1] In or about 2015, CW-1 was convicted of federal fraud and other offenses.  CW-1 has completed his sentence.  CW-1 has been assisting law enforcement since at least in or about 2015 in an effort to obtain charging, sentencing, and immigration benefits, and for payment.  Information that CW-1 has provided has been deemed credible and reliable, and has been corroborated in part through independent means, including information provided by other witnesses.

Caracas, Venezuela, CW-1 supervised the ORENSE DTO's receipt of at least approximately three shipments that each contained at least approximately 1,000 kilograms of cocaine. While CW-1 was supervising the ORENSE DTO's receipt of the foregoing shipments, CW-1 was armed with a machinegun, as were at least several other individuals working for the ORENSE DTO who were helping with the receipt of the shipments. CW-1 also supervised the ORENSE DTO's receipt of at least several loads containing thousands of kilograms of cocaine that were transported from Colombia to Venezuela by airplane. At or around the landing strips where the airplanes landed in Venezuela, which were on or around the border with Colombia, CW-1 observed several individuals providing security, some of whom were armed with AK-47 rifles, and some of whom were wearing Venezuelan military uniforms.

        iii. ORENSE told CW-1 about additional shipments of thousands of kilograms of cocaine that the ORENSE DTO had purchased, and which were ultimately being imported into the United States. For example, in or about 2007 or 2008, ORENSE discussed with CW-1 a shipment containing approximately 5,000 kilograms of cocaine that the ORENSE DTO was helping to transport to Mexico. CW-1 understood from the conversation that the shipment ORENSE described was going to be imported into the United States.

        iv. CW-1 also participated in or heard conversations between ORENSE and other individuals, including Carvajal, regarding the ORENSE DTO's purchase of thousands of kilograms of cocaine that were imported into the United States after arriving in Mexico.

        v. ORENSE used a security detail when traveling in Venezuela, including in furtherance of the ORENSE DTO's drug trafficking activities. The security detail typically consisted of at least approximately eight individuals traveling in at least two vehicles. The security detail stored an M4 rifle in each of the vehicles. Additionally, ORENSE often carried at least one additional machinegun on his person or in the vehicle in which he was traveling, including an FN P90 submachine gun.

<u>The April 2016 Seizure of Boat-1 and 900 Kilograms of Cocaine</u>

        c. On or about April 7, 2016, U.S. Coast Guard personnel interdicted a go-fast vessel with no indicia of nationality ("Boat-1") in international waters south of the Dominican Republic. Coast Guard personnel recovered at least approximately 900 kilograms of substances that later tested positive for cocaine from Boat-1.

d.    At least four men occupied Boat-1 at the time of the interdiction.  One or more of Boat-1's crew claimed that Boat-1 was registered in Colombia, but the Colombian government informed the Coast Guard that it could neither confirm nor deny the nationality of Boat-1.  The four crewmembers of Boat-1 were subsequently arrested based on alleged violations of Title 46, United States Code.

e.    One member of Boat-1's crew ("CW-2")[2] has provided the following information, in substance and in part:

i.    Boat-1 departed from a beach in or around Coro, Venezuela ("Beach-1"), carrying approximately 1,000 kilograms of cocaine, with an intended destination of the Dominican Republic.[3]

ii.    On or about April 4, 2016, approximately two days before Boat-1 departed Venezuela, two co-conspirators not named as defendants herein ("CC-1" and "CC-2") transported CW-2 and several other Boat-1 crewmembers to an estate owned by ORENSE, where CW-2 and the other crewmembers met with ORENSE and were served dinner.  At the estate, CW-2 observed approximately 20 well-armed individuals providing security.  Some of the foregoing individuals were wearing Venezuelan military uniforms.

iii.    On or about April 5, 2016, CC-1 and CC-2 transported CW-2 and other Boat-1 crewmembers to Beach-1, where they met with an individual who described himself as ORENSE's partner.  Shortly thereafter, CW-2 and the other crewmembers

_____

[2] In or about 2016, CW-2 was convicted of a violation of Title 46, United States Code, and sentenced principally to 120 months' imprisonment in connection with the interdiction of Boat-1.  CW-2 is serving his sentence as of the filing of this Complaint.  CW-2 has been providing information to law enforcement in an effort to obtain, *inter alia*, sentencing benefits.  Information that CW-2 has provided has been deemed credible and reliable, and has been corroborated in part through independent means, including information provided by other witnesses.

[3] According to CW-1, in or about mid-2016, while CW-1 and CW-2 were incarcerated at the same prison facility, CW-2 told CW-1, in sum and substance, that CW-2 had recently been arrested while transporting cargo that belonged to ORENSE by boat from Venezuela.

boarded Boat-1 and departed for the Dominican Republic with the cocaine later seized by the Coast Guard.

<u>The October 2016 Seizure of Boat-2 and 350 Kilograms of Cocaine</u>

f.   On or about October 27, 2016, U.S. Coast Guard personnel interdicted a go-fast vessel with no indicia of nationality ("Boat-2") in international waters north of Bonaire, an island in the Caribbean Sea that is a special municipality within the country of the Netherlands.  Coast Guard personnel recovered at least approximately 350 kilograms of substances that later tested positive for cocaine from Boat-2 and the water in the vicinity of Boat-2.

g.   At least five men occupied Boat-2 at the time of the interdiction.  One or more of Boat-2's crew claimed that Boat-2 was registered in Venezuela, but the Venezuelan government informed the Coast Guard that it could neither confirm nor deny the nationality of Boat-2.  The five crewmembers of Boat-2 were subsequently arrested based on alleged violations of Title 46, United States Code.

h.   One member of Boat-2's crew ("CW-3")[4] has provided the following information, in substance and in part:

i.   CC-1 hired CW-3 to work as a crewmember on Boat-2.  Boat-2 departed from Tucacas, Venezuela, with an intended destination of the Dominican Republic.  After Boat-2 had traveled approximately 100 miles, crewmembers of another boat transferred approximately 1,000 kilograms of cocaine to Boat-2.

ii.   CW-3 continued with Boat-2 following the transfer.  On Boat-2, another crewmember told CW-3 that an individual in Venezuela not named as a defendant herein ("CC-3") owned the boat that transferred the cocaine to Boat-2, and that

---

[4] In or about 2016, CW-3 was convicted of a violation of Title 46, United States Code.  In or about 2017, CW-3 was sentenced principally to 80 months' imprisonment in connection with the interdiction of Boat-2.  CW-3 is serving his sentence as of the filing of this Complaint.  CW-3 has been providing information to law enforcement in an effort to obtain, *inter alia*, sentencing benefits.  Information that CW-3 has provided has been deemed credible and reliable, and has been corroborated in part through independent means, including information provided by other witnesses.

CC-3 was partially responsible for dispatching Boat-2 from Venezuela to the Dominican Republic.

        i.   According to CW-1, CC-3 was an associate of ORENSE and the ORENSE DTO.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of CARLOS ORENSE AZOCAR, a/k/a "El Gordo," the defendant, and that he be imprisoned or bailed, as the case may be.

                /s/Matthew S. Passmore  with permission JLC
                _____
                MATTHEW S. PASSMORE
                Special Agent
                Drug Enforcement Administration

Sworn to me through the transmission of this Complaint by reliable electronic means, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, this
23rd day of April, 2021

_____
JAMES L. COTT
United States Magistrate Judge

# **EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X
                                    :
UNITED STATES OF AMERICA            :
                                    :
        - v. -                      :
                                    :       **SUPERSEDING INDICTMENT**
                                    :
NICOLÁS MADURO MOROS,               :       S2 11 Cr. 205 (AKH)
DIOSDADO CABELLO RONDÓN,             :
HUGO ARMANDO CARVAJAL BARRIOS,       :
    a/k/a "El Pollo,"               :
CLÍVER ANTONIO ALCALÁ CORDONES,      :
LUCIANO MARÍN ARANGO,                :
    a/k/a "Ivan Marquez," and        :
SEUXIS PAUCIS HERNÁNDEZ SOLARTE,     :
    a/k/a "Jesús Santrich,"          :
                                    :
                 Defendants.        :
- - - - - - - - - - - - - - - - - - X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 0 5 2020

### COUNT ONE
#### (Narco-Terrorism Conspiracy)

The Grand Jury charges:

#### *Overview*

1.    From at least in or about 1999, up to and including
in or about 2020, NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN,
HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO
ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and
SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the
defendants, participated in a corrupt and violent narco-terrorism
conspiracy between the Venezuelan *Cártel de Los Soles* and the
*Fuerzas Armadas Revolucionarias de Colombia* ("FARC").

2.     From at least in or about 1999, up to and including in or about 2020, the FARC was a terrorist organization -- led at times by LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, among others -- that became one of the largest producers of cocaine in the world and perpetrated acts of violence against United States nationals and property.

3.     From at least in or about 1999, up to and including in or about 2020, the *Cártel de Los Soles*, or "Cartel of the Suns," was a Venezuelan drug-trafficking organization comprised of high-ranking Venezuelan officials who abused the Venezuelan people and corrupted the legitimate institutions of Venezuela -- including parts of the military, intelligence apparatus, legislature, and the judiciary -- to facilitate the importation of tons of cocaine into the United States.  The name of the *Cártel de Los Soles* is a reference to the sun insignias affixed to the uniforms of high-ranking Venezuelan military officials who are members of the Cartel.

4.     NICOLÁS MADURO MOROS, the defendant, helped manage and, ultimately, lead the *Cártel de Los Soles* as he gained power in Venezuela.  Under the leadership of MADURO MOROS and others, the *Cártel de Los Soles* sought not only to enrich its members and enhance their power, but also to "flood" the United States with

2

cocaine and inflict the drug's harmful and addictive effects on users in this country.   Thus, whereas most drug-trafficking organizations in South and Central America have sought to recede from their roles in importing narcotics into the United States in an effort to avoid U.S. prosecution, the *Cártel de Los Soles*, under the leadership of MADURO MOROS and others, prioritized using cocaine as a weapon against America and importing as much cocaine as possible into the United States.

5.   While pursuing these and other objectives, NICOLÁS MADURO MOROS, the defendant, negotiated multi-ton shipments of FARC-produced cocaine; directed that the *Cártel de Los Soles* provide military-grade weapons to the FARC; coordinated foreign affairs with Honduras and other countries to facilitate large-scale drug trafficking; and solicited assistance from FARC leadership in training an unsanctioned militia group that functioned, in essence, as an armed forces unit for the *Cártel de Los Soles*.

### The *Cártel de Los Soles* and the Venezuelan Defendants

6.   At various times between 1999 and 2020, NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," and CLÍVER ANTONIO ALCALÁ CORDONES, the defendants, acted as leaders and managers of the *Cártel de Los Soles* and the narco-terrorism conspiracy with the FARC.

7.     NICOLÁS   MADURO   MOROS,   the   defendant,   is   a
Venezuelan citizen, was previously the president of Venezuela, and
is  now  the  *de facto*  ruler  of  the  country.    MADURO  MOROS  also
previously held a seat in the Venezuelan National Assembly between
in  or  about  2000  and  in  or  about  2006,  acted  as  the  Venezuelan
foreign  minister  between  in  or  about  2006  and  in  or  about  2013,
and  acted  as  the  vice  president  of  Venezuela  in  or  about  2013.
MADURO  MOROS  succeeded  to  the  Venezuelan  presidency  after  Hugo
Chávez died in or about 2013 and, during his presidency, continued
to participate in cocaine trafficking with the *Cártel de Los Soles*
and the FARC.   In or about 2018, MADURO MOROS declared victory in
a  presidential  election  in  Venezuela.    In  or  about  2019,  the
National Assembly of Venezuela invoked the Venezuelan constitution
and declared that MADURO MOROS had usurped power and was not the
president  of  Venezuela.    Since  in  or  about  2019,  more  than  50
countries,  including  the  United  States,  have  refused  to  recognize
MADURO  MOROS  as  Venezuela's  head  of  state  and  instead  recognized
Juan  Guaidó  as  the  interim  president  of  Venezuela.    In  or  about
January 2020, the United States Department of State certified the
authority  of  Guaidó,  as  the  interim  president  of  Venezuela,  to
receive  and  control  property  in  accounts  at  the  United  States
Federal  Reserve  maintained  by  the  Venezuelan  government  and  the
Central Bank of Venezuela.

4

8.   DIOSDADO CABELLO RONDÓN, the defendant, is a Venezuelan citizen, president of Venezuela's National Constituent Assembly, and a member of the Venezuelan armed forces.   CABELLO RONDÓN previously acted as chief of staff to Chávez in or about 2001, vice president of Venezuela in or about 2002, governor of Venezuela's Miranda State between in or about 2004 and in or about 2008, and president of Venezuela's National Assembly between in or about 2012 and in or about 2016.

9.   HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," the defendant, is a Venezuelan citizen and was the director of Venezuela's military intelligence agency, which was known as the *Dirección de Inteligencia Militar* ("DIM"), between in or about 2004 and in or about 2011.   In or about 2013, NICOLÁS MADURO MOROS, the defendant, made CARVAJAL BARRIOS the director of the DIM for a second time.   Between in or about January 2014 and in or about June 2014, CARVAJAL BARRIOS held the title of Venezuela's consul general to Aruba.   In or about January 2016, despite being a fugitive on drug-trafficking charges that have been pending in the Southern District of New York since at least in or about 2011, CARVAJAL BARRIOS was elected to the Venezuelan National Assembly. As of the filing of this Superseding Indictment, CARVAJAL BARRIOS remains a fugitive on pending charges in underlying indictments in

the Southern District of New York and subject to a lawful order of extradition issued by Spain in or about 2019.

10.   CLÍVER ANTONIO ALCALÁ CORDONES, the defendant, is a Venezuelan citizen and a former general in the Venezuelan military.

### The FARC and the FARC Defendants

11.   Between at least in or about 1999, up to and including in or about 2020, the FARC became one of the largest producers of cocaine in the world.   The FARC has also directed violent acts against United States persons and property in foreign jurisdictions, including, but not limited to, Colombia.   For example, the FARC leadership ordered FARC members to kidnap and murder United States citizens and to attack United States interests in order to dissuade the United States from continuing its efforts to fumigate FARC coca fields and disrupt the FARC's manufacturing and distribution of cocaine and cocaine paste.   Consistent with these activities, in or about 1997, the United States Department of State designated the FARC as a Foreign Terrorist Organization. The FARC remains so designated as of the filing of this Superseding Indictment.

12.   LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," the defendant, is a Colombian citizen who joined the FARC in or about 1985.   In or about 2006, the United States Attorney's Office for

the Southern District of New York filed a drug-trafficking charge against 50 leaders of the FARC, including MARÍN ARANGO.  As of the filing of this Superseding Indictment, MARÍN ARANGO is a fugitive on that charge and a member of the FARC's Secretariat, which is the FARC's highest leadership body.

13.  SEUXIS  PAUCIS  HERNÁNDEZ  SOLARTE,  a/k/a  "Jesús Santrich," the defendant, is a Colombian citizen who joined the FARC in or about 1991.  As of the filing of this Superseding Indictment, HERNÁNDEZ SOLARTE is a member of the FARC's Central High Command, which is the FARC's second-highest leadership body.

*Means and Methods of the Narco-Terrorism Conspiracy*

14.  In furtherance of the narco-terrorism conspiracy, at various times between in or about 1999 and in or about 2020, members  of  the  conspiracy  organized  their  drug-trafficking activities as follows:

a.  Beginning in or about 1999, while the FARC was purporting  to  negotiate  toward  peace  with  the  Colombian government, the FARC agreed with leaders of the *Cártel de Los Soles* to  relocate  some  of  its  operations  to  Venezuela  under  the protection of the Cartel.

b.  Members and associates of the FARC, operating under the leadership of LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the

7

defendants, among others, cultivated coca leaves on farms in Colombia and Venezuela, such as in southwest Colombia and in the Serranía del Perijá mountain range that spans Colombia and Venezuela.

c.   The FARC and the *Cártel de Los Soles* dispatched processed cocaine from Venezuela to the United States via transshipment points in the Caribbean and Central America, such as Honduras.   By in or about 2004, the United States Department of State estimated that 250 or more tons of cocaine were transiting Venezuela per year.   The maritime shipments were shipped north from Venezuela's coastline using go-fast vessels, fishing boats, and container ships.   Air shipments were often dispatched from clandestine airstrips, typically made of dirt or grass, concentrated in the Apure State.

d.   In order to achieve safe passage for the large cocaine shipments transiting Venezuela, members and associates of the FARC and the *Cártel de Los Soles* paid bribes, which ultimately benefited NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," and CLÍVER ANTONIO ALCALÁ CORDONES, the defendants, among others, in exchange for, for example, access to commercial ports and data from air and maritime radar in Venezuela.   According to the United States Department of State, approximately 75 unauthorized flights

suspected of drug-trafficking activities entered Honduran airspace in 2010 alone, using what is known as the "air bridge" cocaine route between Venezuela and Honduras.

e.    MADURO    MOROS,    CABELLO    RONDÓN,    CARVAJAL BARRIOS, and ALCALÁ CORDONES coordinated with the FARC in furtherance of the narco-terrorism conspiracy in order to: transport and distribute these large cocaine shipments; benefit from, and cause others to participate in, the provision of heavily armed security to protect the cocaine shipments; cause large quantities of previously-seized cocaine to be sold to drug traffickers in exchange for millions of dollars; interfere with drug-trafficking investigations and pending criminal cases in Venezuela and elsewhere; and help provide the FARC with military-grade weapons, including machineguns, ammunition, rocket launchers, and explosives equipment.

### *Acts in Furtherance of the Narco-Terrorism Conspiracy Between the Cártel de Los Soles and the FARC*

15.    In furtherance of the narco-terrorism conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed:

a.    In or about 2003, an associate of the FARC and the *Cártel de Los Soles* paid SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a

"Jesús Santrich," the defendant, $300,000 to help establish a FARC camp near Apure, Venezuela where the FARC could process cocaine.

        b.   In or about 2005, Chávez instructed NICOLÁS MADURO MOROS, the defendant, who was then a member of the Venezuelan National Assembly, and others, that Venezuelan judges who would not protect the FARC and its activities should be removed from their positions. That same year, the Venezuelan government largely terminated Venezuela's participation in bilateral counter-narcotics operations with the Drug Enforcement Administration ("DEA").

        c.   In or about 2006, Chávez made MADURO MOROS the foreign minister of Venezuela. During the same year, the FARC paid MADURO MOROS $5 million in drug proceeds, through a third party, in connection with a money-laundering scheme that was part of the narco-terrorism conspiracy. MADURO MOROS and others agreed to launder many millions of dollars from the FARC, including the $5 million, by purchasing palm oil extraction equipment from Malaysia with drug proceeds, which would be used to support the operation of African palm plantations in Apure that would appear legitimate. In connection with this scheme, in or about December 2006, Venezuela announced trade agreements with Malaysian firms relating to African palm oil extraction and crude oil exploration in Venezuela.

d.    In or about 2006, the *Cártel de Los Soles*
dispatched a 5.6-ton cocaine shipment from Venezuela on a DC-9 jet
bearing a United States registration number.    DIOSDADO CABELLO
RONDÓN and HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," the
defendants, worked with other members of the *Cártel de Los Soles*
to coordinate the shipment.    The jet departed Venezuela from Simón
Bolívar International Airport in Maiquetía, Venezuela (the
"Maiquetía Airport"), and landed at Ciudad del Carmen Airport in
Campeche, Mexico.    Mexican authorities seized the 5.6 tons of
cocaine when it arrived in Campeche.

e.    In or about 2008, Chávez, who was at that time
the president of Venezuela and one of the leaders of the *Cártel de
Los Soles*, agreed with LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez,"
the defendant, to use funds from the Venezuelan state-owned oil
producer, Petróleos de Venezuela (PDVSA), to support the FARC's
drug-trafficking and terrorist operations.

f.    In or about 2008, MADURO MOROS, CABELLO
RONDÓN, and CARVAJAL BARRIOS attended a meeting with a FARC
representative at which the attendees agreed that the *Cártel de
Los Soles* would provide the FARC cash and weapons in exchange for
increased cocaine production.    During the meeting, MADURO MOROS
agreed to abuse his authority as foreign minister to ensure that

11

the border between Venezuelan and Colombia remained open to facilitate drug trafficking.

g.   In or about 2008, CABELLO RONDÓN, CARVAJAL BARRIOS, and CLÍVER ANTONIO ALCALÁ CORDONES, the defendant, held a meeting at which they agreed that ALCALÁ CORDONES would take on additional duties coordinating drug-trafficking activities by the *Cártel de Los Soles* and the FARC.

h.   In or about 2009, MADURO MOROS, CABELLO RONDÓN, and CARVAJAL BARRIOS attended a meeting with a FARC representative at which the attendees discussed a four-ton cocaine shipment that the FARC was prepared to transport to the *Cártel de Los Soles*.   CABELLO RONDÓN directed that the FARC deliver the cocaine to a particular location in Venezuela, where a jet would be waiting to transport the cocaine to Nicaragua for further shipment to Mexico and importation into the United States.   During the meeting, the group also discussed a recent coup d'état in Honduras, and CABELLO RONDÓN warned, in substance and in part, that the resulting instability could "fuck up the business." MADURO MOROS traveled to Honduras after the meeting, purporting to act as the Venezuelan foreign minister, in order to try to intervene on behalf of the *Cártel de Los Soles* so that events in Honduras would not disrupt the drug-trafficking activities of the narco-terrorism conspiracy.

i.   In or about September 2013, months after MADURO MOROS succeeded to the Venezuelan presidency, the *Cártel de Los Soles* dispatched 1.3 tons of cocaine on a commercial flight from the Maiquetía Airport to Paris Charles de Gaulle Airport. French authorities seized the cocaine.   Following the seizure, MADURO MOROS cancelled a trip to attend a session of the U.N. General Assembly in New York, citing to the media purported death threats against him.   In Venezuela, MADURO MOROS convened a meeting with, among others, CABELLO RONDÓN and CARVAJAL BARRIOS.   During the meeting, MADURO MOROS told CABELLO RONDÓN and CARVAJAL BARRIOS, in substance and in part, that they should not have used the Maiquetía Airport for drug trafficking after the 2006 seizure in Mexico, and that the *Cártel de Los Soles* should instead use its other well-established drug routes and locations to dispatch cocaine.

j.   In or about September 2013, shortly after French authorities seized the 1.3-ton cocaine shipment from the *Cártel de Los Soles*, MADURO MOROS and others authorized the arrests of Venezuelan military officials in an effort to divert public and law enforcement scrutiny from the participation in the shipment by MADURO MOROS, CABELLO RONDÓN, and CARVAJAL BARRIOS.

k.   In or about 2014, MADURO MOROS met with MARÍN ARANGO at a military base in Caracas.   During the meeting, MADURO

13

MOROS agreed to continue to provide weapons to the FARC and requested that the FARC help train an armed militia group in Venezuela.  MADURO MOROS also told MARÍN ARANGO, in substance and in part, that the militia would not be associated with the Venezuelan government, which would afford plausible deniability to government officials for the militia's anticipated violence. MARÍN ARANGO agreed to help MADURO MOROS train the militia and later facilitated training for members of the militia near his FARC camp in Zulia State.

l.    In or about July 2014, Aruban authorities provisionally arrested CARVAJAL BARRIOS at the request of the United States.  In response, MADURO MOROS, CABELLO RONDÓN, and other members of the *Cártel de Los Soles* pressured Aruba and the Dutch government to release CARVAJAL BARRIOS, including by reportedly deploying Venezuelan naval assets toward Aruba.  Aruba released CARVAJAL BARRIOS, and he returned to the protection of the *Cártel de Los Soles* in Venezuela.

m.    In or about 2015, following the agreement between MADURO MOROS and MARÍN ARANGO regarding the provision of weapons and other equipment, members of the *Cártel de Los Soles* diverted Venezuelan military equipment to the FARC.  CABELLO RONDÓN personally participated in the delivery of machineguns, ammunition, and rocket launchers to the FARC at a military base in

14

Venezuela.    During  the  delivery,  CABELLO  RONDÓN  and  others
discussed  the  fact  that  the  weapons  were  a  partial  payment  for
cocaine  that  the  FARC  had  provided  to  members  of  the  *Cártel de Los
Soles*.

           n.    Between  in  or  about  October  2015  and  in  or
about  November  2015,  Efrain  Campo  Flores  and  Franqui  Francisco
Flores  de  Freitas  -- two  relatives  of  MADURO  MOROS  -- agreed  during
recorded  meetings  with  DEA  confidential  sources  to  dispatch  multi-
hundred-kilogram   cocaine    shipments    from    MADURO   MOROS's
"presidential  hangar"  at  the  Maiquetía  Airport.    During  recorded
meetings  with  the  sources,  Campo  Flores  and  Flores  de  Freitas
explained  that  they  were  at  "war"  with  the  United  States,  described
the  *Cártel de Los Soles*,  discussed  a  connection  to  a  "commander
for  the  FARC"  who  was  "supposedly  high-ranked,"  and  indicated  that
they  were  seeking  to  raise  $20  million  in  drug  proceeds  to  support
a  campaign  by  the  Venezuelan  first  lady  -- and  wife  of  MADURO  MOROS
-- in  connection  with  a  late-2015  election  for  the  Venezuelan
National  Assembly.    Campo  Flores  referred  to  MADURO  MOROS  as  his
"father,"  and  stated  that  "what  we  want  is  for  him  to  take  control
again  of  the  . . . National  Assembly."    Flores  de  Freitas  joked
that  "any  opposing  candidate  who  comes  out  and  starts  to  become  a
pest  . . . three  or  four  have  already  been  locked  up."    In  November
2016,  Campo  Flores  and  Flores  de  Freitas  were  convicted  at  trial

in the Southern District of New York of conspiring to import cocaine into the United States.

o.    In or about 2017, MADURO MOROS continued to work with and direct other members of the *Cártel de Los Soles* to dispatch large cocaine shipments to the United States. Specifically, CABELLO RONDÓN and other members of the *Cártel de Los Soles* facilitated air shipments of ton quantities of cocaine to clandestine airstrips in Venezuela's Barinas State. Uniformed FARC personnel armed with machineguns and other weapons helped receive the cocaine in Barinas and loaded the drugs into vehicles with secret compartments to be transported toward the Venezuelan coast for further distribution.

p.    Beginning in or about 2017, after purporting to negotiate peace agreements with the Colombian government on behalf of the FARC in or about 2016, HERNÁNDEZ SOLARTE agreed to provide a multi-ton quantity of cocaine to DEA confidential sources so that the drugs could be imported into the United States. The sources purported to work for Rafael Caro Quintero, a Mexican drug trafficker who participated in the 1985 torture and murder of DEA Agent Enrique "Kiki" Camarena. During a recorded meeting, HERNÁNDEZ SOLARTE referred to the murder of Camarena by characterizing Caro Quintero as the person who had killed the "son of the bitch of the DEA."

q.   In or about June 2018, Colombian authorities provisionally arrested HERNÁNDEZ SOLARTE, at the request of the United States Attorney's Office for the Southern District of New York, based on a cocaine-importation conspiracy charge in this District related to HERNÁNDEZ SOLARTE's agreement with DEA confidential sources to provide large quantities of cocaine for importation into the United States in or about 2017 and 2018. HERNÁNDEZ SOLARTE was subsequently released, however, and is a fugitive as of the filing of this Superseding Indictment.

r.   In or about July 2019, MADURO MOROS and CABELLO RONDÓN attended a videotaped press conference at which MADURO MOROS announced that the FARC, and in particular MARÍN ARANGO and HERNÁNDEZ SOLARTE, are welcome in Venezuela.

s.   In August 2019, MARÍN ARANGO, standing near HERNÁNDEZ SOLARTE, announced in a videotaped statement that the FARC was beginning a "new phase" of its "armed struggle." MARÍN ARANGO characterized this "struggle" as a "continuation of the rebel fight."

<u>STATUTORY ALLEGATIONS</u>

16.   From at least in or about 1999, up to and including in or about 2020, in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, including in Venezuela, Colombia, Mexico, Iran, Syria,

Lebanon, and elsewhere, NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, at least one of whom will be first brought to and arrested in the Southern District of New York, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 21, United States Code, Section 960a.

17. It was a part and an object of the conspiracy that NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, would and did engage in conduct that would be punishable under Title 21, United States Code, Section 841(a) if committed within the jurisdiction of the United States, to wit, the distribution of, and possession with the intent to distribute, five kilograms and more of mixtures and substances containing a detectable amount of cocaine, knowing and intending to provide, directly and indirectly, something of pecuniary value to a person and organization that has engaged and engages in terrorism and terrorist activity, to wit, the FARC (which has been

designated by the United States Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act and remains so designated) and its members, operatives, and associates, having knowledge that such organization and persons have engaged and engage in terrorism and terrorist activity, in violation of Title 21, United States Code, Section 960a.

(Title 21, United States Code, Section 960a; and
Title 18, United States Code, Section 3238.)

## COUNT TWO
### (Cocaine Importation Conspiracy)

The Grand Jury further charges:

18. Paragraphs 1 through 15 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

19. From at least in or about 1999, up to and including in or about 2020, in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, including in Venezuela, Colombia, Mexico, Iran, Syria, Lebanon, and elsewhere, NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, at least

one of whom will be first brought to and arrested in the Southern District of New York, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate provisions of Title 21, United States Code, Chapter 13, Subchapter II.

20. It was a part and an object of the conspiracy that NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, would and did import into the United States from a place outside thereof a controlled substance, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

21. It was further a part and an object of the conspiracy that NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, would and did manufacture, distribute, and possess with intent to distribute a controlled substance, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported

20

into the United States and into waters within a distance of 12 miles of the coast of the United States, in violation of Title 21, United States Code, Sections 959(a) and 960(a)(3).

22. It was further a part and an object of the conspiracy that NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, would and did, on board an aircraft registered in the United States, manufacture, distribute, and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 959(c) and 960(a)(3).

23. The controlled substance that NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, conspired to (i) import into the United States and into the customs territory of the United States from a place outside thereof, (ii) manufacture and distribute, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the

United States from a place outside thereof, and (iii) manufacture, distribute, and possess on board an aircraft registered in the United States, was five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 960(b)(1)(B).

(Title 21, United States Code, Section 963; and
Title 18, United States Code, Section 3238.)

## COUNT THREE
**(Possession of Machineguns and Destructive Devices)**

The Grand Jury further charges:

24. Paragraphs 1 through 15 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

25. From at least in or about 1999, up to and including in or about 2020, in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, including in Venezuela, Colombia, Mexico, Iran, Syria, Lebanon, and elsewhere, and for which at least one of two or more joint offenders will be first brought to and arrested in the Southern District of New York, NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús

Santrich," the defendants, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, to wit, the controlled substance offenses charged in Counts One and Two of this Superseding Indictment, knowingly used and carried firearms, and, in furtherance of such crime, knowingly possessed firearms, and aided and abetted the use, carrying, and possession of firearms, to wit, machineguns that were capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger, as well as destructive devices.

(Title 18, United States Code,
Sections 924(c)(1)(A), 924(c)(1)(B)(ii), 3238, and 2.)

## COUNT FOUR
### (Conspiracy to Possess Machineguns and Destructive Devices)

The Grand Jury further charges:

26. Paragraphs 1 through 15 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

27. From at least in or about 1999, up to and including in or about 2020, in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, including in Venezuela, Colombia, Mexico, Iran, Syria, Lebanon, and elsewhere, NICOLÁS MADURO MOROS, DIOSDADO CABELLO

RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, at least one of whom will be first brought to and arrested in the Southern District of New York, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 924(c).

28.  It was a part and an object of the conspiracy that NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, and others known and unknown, would and did, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, to wit, the controlled substance offenses charged in Counts One and Two of this Superseding Indictment, use and carry firearms, and, in furtherance of such drug trafficking crime, possess firearms, including machineguns that were capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger, as well as destructive devices, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 924(c)(1)(B)(ii).

24

(Title 18, United States Code, Sections 924(o) and 3238.)

## FORFEITURE ALLEGATION
### (As to Counts One and Two)

29. As a result of committing the controlled substance offenses charged in Counts One and Two of this Superseding Indictment, NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853 and 970, any and all property constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of the offenses, and any and all property used, or intended to be used, in any manner or part, to commit, and to facilitate the commission of, the offenses charged in Counts One and Two of this Superseding Indictment.

## FORFEITURE ALLEGATION
### (As to Counts Three and Four)

30. As a result of committing the firearms offenses charged in Counts Three and Four of this Superseding Indictment, NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS

PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d), all firearms and ammunition involved in and used in the commission of the offenses charged in Counts Three and Four of this Superseding Indictment.

Substitute Assets Provision

31. If any of the above-described forfeitable property, as a result of any act or omission of NICOLÁS MADURO MOROS, DIOSDADO CABELLO RONDÓN, HUGO ARMANDO CARVAJAL BARRIOS, a/k/a "El Pollo," CLÍVER ANTONIO ALCALÁ CORDONES, LUCIANO MARÍN ARANGO, a/k/a "Ivan Marquez," and SEUXIS PAUCIS HERNÁNDEZ SOLARTE, a/k/a "Jesús Santrich," the defendants:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third person;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Sections 853(p) and 970, and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 21, United States Code, Sections 853 & 970; and Title 28, United States Code, Section 2461(c).)

FOREPERSON

GEOFFREY S. BERMAN
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

NICOLÁS MADURO MOROS,
DIOSDADO CABELLO RONDÓN,
HUGO ARMANDO CARVAJAL BARRIOS,
a/k/a "El Pollo,"
CLÍVER ANTONIO ALCALÁ CORDONES,
LUCIANO MARÍN ARANGO,
a/k/a "Ivan Marquez," and
SEUXIS PAUCIS HERNÁNDEZ SOLARTE,
a/k/a "Jesús Santrich,"

Defendants.

## SUPERSEDING INDICTMENT

S2 11 Cr. 205 (AKH)

(21 U.S.C. §§ 960a, 963; and
18 U.S.C. §§ 924, 3238, 2.)

GEOFFREY S. BERMAN
United States Attorney.

**A TRUE BILL**

*Angella Bucco Dpty* Foreperson.

3/5/2020

Filed Indictment under seal
Arrest warrants issued
USMJ FOX